# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00335-CV

**Appellant, Farmers Texas County Mutual Insurance Company**
**// Cross-Appellants, Irene Romo and Fenn Ratcliffe,**
**Individually and on Behalf of All Other Persons Similarly Situated**

**v.**

**Appellees, Irene Romo and Fenn Ratcliffe,**
**Individually and on Behalf of All Other Persons Similarly Situated**
**// Cross-Appellees, Farmers Texas County Mutual Insurance Company and**
**USAA County Mutual Insurance Company**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT**
**NO. D-1-GN-06-001824, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING**

## O P I N I O N

In this declaratory judgment action, Plaintiffs Irene Romo and Fenn Ratcliffe challenge the propriety of installment payment plan fees charged by USAA County Mutual Insurance Company and an affiliate of Farmers Texas County Mutual Insurance Company for providing installment payment plans to auto insurance policyholders. Romo and Ratcliffe claim that the charges to policyholders for electing to pay premiums in installments pursuant to the payment plans are not authorized by the Texas Insurance Code, violate the filed rate doctrine, and breach the parties' contracts of insurance. They seek recovery of the installment payment plan fees they have paid and also seek to have a class certified consisting of similarly situated policyholders.

The trial court rendered declarations that (1) the installment fees at issue are subject to certain filing requirements under the Texas Insurance Code, but (2) county mutual insurance companies were not subject to these filing requirements until December 1, 2004, when they became rate regulated, and therefore, (3) the charges were not prohibited by the insurance code prior to December 1, 2004. Farmers and the Plaintiffs appeal.[1] Farmers argues that the fees in question have never been and are not now subject to filing requirements under the insurance code provision in question and, alternatively, even if the fees are subject to such filing requirements, the Plaintiffs have no private right of action under the insurance code provisions at issue to recover the fees they paid. The Plaintiffs argue that the fees in question have been subject to filing requirements since the companies began charging the fees, that they are entitled to declarations that the filed rate doctrine applies to the fees prior to December 1, 2004, and that since neither insurer filed these charges with the Department of Insurance, the insurers were not entitled to collect the fees.

We conclude that the installment fees at issue were not subject to the filing requirements alleged by the Plaintiffs under either the current version of the applicable statute or its predecessor. Therefore, we reverse the district court's declarations to the contrary.

*Background*

Farmers and USAA are county mutual insurance companies formed under the laws of the State of Texas and each has a certificate of authority from the Commissioner of Insurance to do business in the State of Texas. They both write six-month private passenger auto insurance

___

[1] USAA did not appeal because it had not collected any of the type of fees in dispute after December 1, 2004.

policies in Texas. In addition, an affiliate of USAA writes twelve-month residential property renters policies in Texas.

From October 1987 to October 2002, Romo (together with her husband who is now deceased) was insured under a series of six-month private passenger auto policies written by Texas Farmers Insurance Company. Texas Farmers Insurance Company withdrew from the private passenger auto insurance market in Texas and, in October 2002, the Romos' policy was replaced by a private passenger auto policy written by Farmers Texas County Mutual Insurance Company, one of the defendants in this case. This policy has since been renewed every six months to the present. From November 2002 to the present, Ratcliffe has been insured under a series of six-month private passenger auto policies written by USAA County Mutual Insurance Company.

Both Romo and Ratcliffe were offered the option of paying the premiums for their policies in monthly installments rather than in a single lump sum when due, and both elected to do so. The option to pay in monthly installments included an additional service fee for the installment plan that varied depending on the size of the premium payment.[2] The parties stipulate that both options, (1) paying premiums in full upon renewal without incurring a service fee and (2) paying premiums in monthly installments together with a service fee, were disclosed to Romo and Ratcliffe, and that each voluntarily elected to pay premiums in installments along with the service fee.

---

[2] The installment fees at issue for the named plaintiffs varied between $3.00 and $6.50 per month.

The installment payment plan offered to Farmers's insureds has, since 1984, been offered by Farmers Insurance Exchange ("FIE"), an affiliate of Farmers.[3] Farmers's insureds, such as Romo, who wish to take advantage of an installment payment plan sign a Monthly Payment Plan Agreement with FIE that includes an agreement to pay the monthly service fee. FIE then collects premium payments on behalf of Farmers as well as the service fee provided for in the Monthly Payment Plan Agreement. FIE forwards the insurance premium on to Farmers and retains the service fee pursuant to a 1984 Administrative Servicing Agreement between it and Farmers.

The Administrative Servicing Agreement, filed with the State Board of Insurance in 1991, provides that FIE will perform "premium collection services" on behalf of Farmers for "policyholders of [Farmers] who elect to remit premiums on a monthly payment plan." The Administrative Servicing Agreement also provides that the service charges for providing the installment payment plan are not premiums for insurance, but are charges for the services of FIE, and are the property of FIE. This arrangement for premium collection services to be performed by FIE for Farmers was deemed approved by the Commissioner of Insurance by operation of law pursuant to the Holding Company Systems Regulatory Act and has never been disapproved or challenged by the Commissioner of Insurance. *See* Tex. Ins. Code Ann. § 823.103 (West 2007); Act of May 27, 1991, 72d Leg., R.S., ch. 242, § 8.03, 1991 Tex. Gen. Laws 939, 1016-17, codified at former Tex. Ins. Code art. 21.49-1, § 4(d), recodified by Act of May 22, 2001, 77th Leg., R.S., ch. 1419, § 1, sec. 823.103, 2001 Tex. Gen. Laws 3658, 3700.

---

[3] It is undisputed that Farmers and FIE are "affiliates" under the Holding Company Systems Regulatory Act. Tex. Ins. Code Ann. § 823.003 (West 2007).

4

USAA offered its insureds three different installment payment plans without using the services of a subsidiary or affiliate company. USAA insureds such as Ratcliffe who elected to pay their premiums in installments forwarded the service fee for the installment plan directly to USAA together with each premium payment. As of May 1, 2004, USAA had stopped assessing a fee for any of its installment payment plans.

Romo and Ratcliffe originally filed this action in August 2003 seeking relief individually as well as class relief for a class of similarly situated policyholders. They claim that section 912.201 of the insurance code and its predecessor—article 17.25, section 6 of the insurance code—required Farmers and USAA to file a schedule of the amounts they or their affiliates charged policyholders for electing to pay their auto insurance premiums in installments over time rather than in a single lump sum when due.[4] They asserted claims for declaratory relief to have these fees declared subject to the filing requirements of section 912.201 and its predecessor as well as subject to the filed rate doctrine. The Plaintiffs claim that, as a consequence of the filing requirements and the filed rate doctrine, the defendants' collection of the fees was illegal and/or a breach of contract because a schedule of the fees had not been filed with the Department of Insurance. Romo and Ratcliffe also asserted three causes of action for damages: (1) overcharge, (2) breach of contract, and (3) money had and received.

---

[4] The claims are not based on an allegation that the service fees were not disclosed or were misrepresented in any way. There is no dispute that the fees were fully and accurately disclosed both to the Plaintiffs and to the Texas Department of Insurance, and that the Plaintiffs voluntarily elected to use the offered installment plans and pay the additional fees. The crux of the Plaintiffs' claims is that the insurers were required to *file* the amount of the service fees with the Texas Department of Insurance and, unless the amounts were filed, policyholders could not be charged these fees whether they and the Department of Insurance were aware of the fees or not.

5

Defendants Farmers and USAA answered and filed counterclaims for declaratory relief seeking declarations that the installment payment plan fees in question are not subject to the filing requirements of section 912.201 or its predecessor, and even if they were, the filed rate doctrine did not operate to bar their collection of the fees. Thus, their collection of the fees was authorized and legal. Since the cross-claims for declaratory relief were questions of law that would govern whether the underlying class claims could go forward, the parties agreed to sever the claims for declaratory relief from the claims for damages and filed cross-motions for summary judgment in the severed declaratory judgment action. The parties stipulated to the material facts relating to their claims for declaratory relief. On appeal, Farmers and USAA also assert that there is no private right of action under section 912.201 and, therefore, the trial court lacked subject matter jurisdiction over the Plaintiffs' claims for declaratory relief because Romo and Ratcliffe do not have standing to pursue those claims.

### Standard of Review

We review the summary judgment de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). The standards for reviewing a summary judgment are well established: (1) the movant must demonstrate that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether a disputed issue of material fact exists that would preclude summary judgment, we take all evidence favorable to the non-movant as true; and (3) we indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548-49 (Tex. 1985). When, as here, both parties file motions for summary judgment and the court denies both in part and grants both in

6

part, we must review the summary judgment evidence presented by both sides, decide all questions presented, and render the judgment that the trial court should have rendered. *See City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex. 2000). The material facts relating to the nature of the installment plan service fees are not in dispute. Consequently, whether the service fees at issue are subject to filing requirements under section 912.201 of the insurance code and its predecessor is a question of law.

### Subject Matter Jurisdiction

Subject matter jurisdiction is essential to the authority of a court to decide a case. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443 (Tex. 1993). Standing is implicit in the concept of subject matter jurisdiction and is a component of subject matter jurisdiction. *Id.* at 443-45. Thus, a plaintiff must have standing for the court to have subject matter jurisdiction to decide the merits of the claims. *Id.*; *State Bar of Tex. v. Gomez*, 891 S.W. 2d 243, 245 (Tex. 1994). Subject matter jurisdiction is never presumed and is an issue that may be raised for the first time on appeal, and a lack of subject matter jurisdiction on the part of the court cannot be waived by the parties. *Texas Ass'n of Bus.*, 852 S.W.2d at 443-45.

Farmers and USAA argue on appeal that the Plaintiffs do not have a private right of action to enforce or seek a remedy for any potential violations of, or failures to comply with, section 912.201. They assert that the power to enforce section 912.201 rests exclusively with the Department of Insurance and the Commissioner of Insurance, and that the Plaintiffs' claims for declaratory relief in this case "arise under or are premised on" an alleged violation of section 912.201 and its predecessor. Therefore, Farmers and USAA conclude, the Plaintiffs lack standing to pursue

their claims for declaratory relief in this case because those claims necessarily involve an adjudication of whether Farmers and USAA have failed to comply with section 912.201.

Plaintiffs Romo and Ratcliffe counter that they are not seeking to pursue a private cause of action for a violation of section 912.201 and its predecessor. Rather, they argue, they are pursuing claims for breach of contract as well as common law claims for money had and received and overcharge that happen to turn on whether Farmers and USAA filed the amounts they have charged in accordance with section 912.201. They contend that if Farmers and USAA failed to file the amount of the installment payment plan fees in accordance with section 912.201 and its predecessor, such a failure would give rise to a breach of the parties' contracts of insurance under the theory that the insurers are only allowed by law to contract for amounts that are filed pursuant to section 912.201. Charging any amount not filed in accordance with section 912.201, they argue, is illegal and is a breach of contract because insurers are allowed by law to collect only "lawfully prescribed rates" pursuant to their contracts of insurance. Romo and Ratcliffe's theory is as follows:

- contracts of insurance require insurers to charge only lawfully prescribed amounts;

- by virtue of the filed rate doctrine, lawfully prescribed amounts for the policies involved in this case are those amounts filed with the Department of Insurance in accordance with section 912.201 and its predecessor;

- Farmers and USAA did not file the installment payment plan fees in accordance with section 912.201;

- the installment payment plan fees, therefore, are not lawfully prescribed amounts that may be charged;

- by charging and collecting the fees Farmers and USAA breached their contracts of insurance with Romo and Ratcliffe giving rise to claims for breach of contract as well as related claims for money had and received and overcharge; and,

8

• Romo and Ratcliffe have standing to seek declaratory relief as to whether the filed rate doctrine and, as a corollary, section 912.201 apply to the installment payment plan fees at issue not as a private cause of action for a failure to comply with section 912.201, but as a part of their contract dispute.

The jurisdictional issue here is the Plaintiffs' standing to have their request for declaratory relief adjudicated rather than the merits of the underlying cause of action for breach of contract. In this instance, the standing issue is distinct from the merits. In such cases, a court should not adjudicate the merits of the parties' claims in deciding the issue of standing. *See Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554-55 (Tex. 2000); *In re Sullivan*, 157 S.W.3d 911, 920 (Tex. App.—Houston [14th Dist.] 2005, orig. proceeding). Romo and Ratcliffe have sought declaratory relief as to the application of a statute and the application of the filed rate doctrine to certain items potentially addressed by that statute. They have pleaded that they seek this relief in connection with their underlying claim for breach of contract.[5] The connection of section 912.201 to the request for declaratory relief here is that an alleged failure to comply with the filing requirements of section 912.201 coupled with charging an unfiled amount constitutes a breach of the contract of insurance. The Plaintiffs claim the failure to comply with section 912.201 while charging the installment payment plan fees is a breach of contract and they will seek remedies for that breach. This may or may not be a viable claim, but this is the allegation. It does not imply a private right of action to sue for a violation of section 912.201. The underlying dispute relating to the request for

---

[5] The underlying causes of action for breach of contract, money had and received, and overcharge have been severed into a separate cause number to allow resolution of the claims for declaratory relief in this case. We address standing in this case only with regard to the requested declaratory relief. We express no opinion as to the Plaintiffs' standing with respect to the underlying causes of action in the severed cause.

declaratory relief is for breach of contract. The alleged noncompliance with the statute is simply one component of the alleged breach of contract. Whether there is any merit to this theory or any merit or viability to the underlying breach of contract claim is an inquiry appropriate for a disposition on the merits of the underlying claim rather than disposition as a matter of standing and jurisdiction with respect to the request for declaratory relief in this case.

Romo and Ratcliffe have standing to seek a judicial resolution of the legal questions of whether the statute at issue and the filed rate doctrine apply in the manner that they claim affects the amounts that the insurers are allowed to charge under their contracts of insurance. As policyholders alleging a breach of the insurance contract they have a justiciable interest in the resolution of the questions. We hold that the trial court had subject matter jurisdiction to address the questions presented by the claims for declaratory relief in this case.

### *Filing Requirements Under the Statute*

The Plaintiffs' claims are based on the argument that former article 17.25, section 6 of the insurance code and its amended version currently in force, section 912.201, required and continue to require county mutual insurance companies to file with the Department of Insurance a schedule of the amounts they charge insureds for allowing payments to be made in installments. Former article 17.25, section 6 provided:

> Sec. 6. Such companies shall file with the Board a schedule of its rates, the amount of policy fee, inspection fee, membership fee, or initial charge by whatever name called, to be charged its policyholders or those applying for policies.

Act of June 7, 1951, 52d Leg., R.S., ch. 491, § 1, art. 17.25, sec. 6, 1951 Tex. Gen. Laws 868, 1043 [hereinafter 1951 Act], *repealed by* Act of May 22, 2001, 77th Leg., R.S., ch. 1419, § 31(a), 2001 Tex. Gen. Laws 3658, 4208 [hereinafter 2001 Act]. Article 17.25, section 6 was recodified and replaced effective June 1, 2003, *see* 2001 Act, § 33, 2001 Tex. Gen. Laws at 4201, by section 912.201 of the insurance code, which provides:

> A county mutual insurance company shall file with the department a schedule of the amounts the company charges a policyholder or an applicant for a policy, regardless of the term the company uses to refer to those charges, including "rate," "policy fee," "inspection fee," "membership fee," or "initial charge." A county mutual insurance company shall file premium, expense, and loss experience data with the department in the manner prescribed by the commissioner. An insurer shall file the schedules and data required under this section according to rules promulgated by the commissioner.

Tex. Ins. Code Ann. § 912.201 (West 2007).

The text of article 17.25, section 6 was first enacted in 1947 as article 4860a-20, section 2a(d) of the Texas Revised Civil Statutes. *See* Act of June 5, 1947, 50th Leg., R.S., ch. 367, § 1, sec. 2a(d), 1947 Tex. Gen. Laws 739, 741, *repealed by* 1951 Act, § 4, 1951 Tex. Gen. Laws at 1094. It was recodified in 1951 without change as article 17.25, section 6 of the insurance code, *see* 1951 Act, § 1, art. 17.25, sec. 6, 1951 Tex. Gen. Laws at 1049 (repealed 2001), and the text remained unchanged by the legislature until the statute was again recodified as section 912.201 effective 2003, *see* 2001 Act, § 1, sec. 912.201, 2001 Tex. Gen. Laws at 3975. The recodification of article 17.25, section 6 was part of the state's ongoing statutory revision and codification program begun in 1963. The program contemplates a topic-by-topic revision of the state's general and permanent statute law without substantive change. Tex. Ins. Code Ann. § 30.001(a) (West 2007).

11

Former article 17.25, section 6 required county mutual insurance companies to file a schedule of two types of charges to "policyholders or those applying for policies":

(1)     the company's rates; and

(2)     the amount of policy fee, inspection fee, membership fee, or initial charge by whatever name called.

*See* 1951 Act, § 1, art. 17.25, sec. 6, 1951 Tex. Gen. Laws at 1043 (repealed 2001). The installment payment plan fees at issue in this case do not fall into either of these categories. They are not a rate nor a component of a rate. Nor are they an initial charge for a policy that might go by a variety of labels such as "policy fee," "inspection fee," or "membership fee." It is undisputed by the parties that the installment payment plan fees at issue are a charge associated with the company's providing an optional plan for a policyholder to pay his or her premium in installments. The parties have stipulated that a policyholder may avoid these charges altogether and receive the same insurance coverage by paying the premium for the policy in full when due. Therefore, since the fees at issue are not a rate or an initial charge for a policy, former article 17.25, section 6 did not require county mutual insurers to file a schedule of amounts they or their affiliates charged for providing the option to pay premiums in installments. Accordingly, the trial court erred in declaring that the installment fees are charges covered by former article 17.25, section 6.

This interpretation is consistent with the regulatory structure implemented by the Department of Insurance. Since 1992, the Department has required auto insurers other than county mutual insurers to offer an installment payment plan pursuant to Rule 14 of the Texas Automobile Rules and Rating Manual. Rule 14 was made applicable to county mutual insurers in 1997 pursuant

12

to Personal Auto Policy ("PAP") Special Instruction No. 11, which is part of the policy form that county mutual insurers are required to use in Texas. Rule 14 both requires auto insurers to make an installment payment plan available to policyholders and expressly allows the insurers to charge a regulated fee for making the plan available. It is undisputed that Farmers and USAA were in compliance with Rule 14 during all relevant time frames.

Former article 17.25, section 6 was in force at the time Rule 14 was originally promulgated and at the time that the Department of Insurance made Rule 14 applicable to county mutual insurers. The Department of Insurance has never taken the position that the fees authorized by Rule 14 were required to be filed pursuant to former article 17.25, section 6 or its successor section 912.201. It is undisputed that the Department has been responsible for the enforcement of former article 4860a-20, section 2a(d), former article 17.25, section 6, and current section 912.201 since 1947 and that the Department has never required a county mutual insurer to file the amount of a service charge for an installment payment plan pursuant to these statutes. The Department has a specific regulatory scheme with respect to installment payment plans and the fees insurers are allowed to charge with respect to those plans. The Department does not consider former article 17.25, section 6 and its successor section 912.201 part of that regulatory scheme. "Construction of a statute by the administrative agency charged with its enforcement is entitled to serious consideration, so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993); *see State v. Public Util. Comm'n of Tex.*, 883 S.W.2d 190, 196 (Tex. 1994) ("[T]he contemporaneous construction of a statute by the administrative agency charged with its enforcement

13

is entitled to great weight."); *Texas Employers' Ins. Ass'n v. Holmes*, 196 S.W.2d 390, 395 (Tex. 1946) ("[T]he practical interpretation of the Act by the agency charged with the duty of administering it is entitled to the highest respect from the courts."); *Stanford v. Butler*, 181 S.W.2d 269, 273 (Tex. 1944) ("The contemporaneous construction of an act by those who are charged with the duty of its enforcement . . . is worthy of serious consideration as an aid to interpretation, particularly where such construction has been sanctioned by long acquiescence." (quoting 39 TEX. JUR. *Statutes* § 125 (1936))). The Department of Insurance's practical construction of former article 17.25, section 6 and its regulatory scheme for dealing with premium installment payment plans including the charges for those plans are consistent with the language of the statute and entitled to serious consideration. Nothing in the language of former article 17.25, section 6 requires the adoption of an interpretation inconsistent with the interpretation and practice of the Department of Insurance.

The Department of Insurance continued its regulatory scheme relating to premium installment payment plans and did not require schedules of charges for those plans to be filed even after former article 17.25, section 6 was replaced by section 912.201. The Department's treatment of the statute before and after the 2003 recodification process was the same. This is, of course, consistent with the proposition that the recodification process did not make a substantive change. *See* Tex. Ins. Code Ann. § 30.001(a). However, the question of whether the recodification of article 17.25, section 6—now section 912.201—did, in fact, involve a substantive change (even if inadvertent) to now require that the installment payment plan charges at issue are subject to filing requirements raises an additional issue.

Romo and Ratcliffe point to the language of the recodified statute and argue that the recodified version requires county mutual insurers to file a schedule of *any* amount that the company charges a policyholder or applicant for a policy regardless of what the charge is for. Romo and Ratcliffe rely on the following language in section 912.201:

> A county mutual insurance company shall file with the Department a schedule of the amounts the company charges a policyholder or an applicant for a policy, regardless of the term the company uses to refer to those charges . . . .

*Id.* § 912.201. This language is, from a grammatical standpoint, a structural change from the language of former article 17.25, section 6. It uses essentially the same words, but moves the clauses around in a way that allows for an argument that, whether deliberate or not, the meaning of the statute was changed in the recodification process. *See Fleming Foods of Tex., Inc. v. Rylander*, 6 S.W.3d 278, 286 (Tex. 1999) (when specific provisions of a "nonsubstantive" codification are direct, unambiguous, and cannot be reconciled with prior law, the codification rather than the prior, repealed statute must be given effect). The reshuffling of the clauses in the statute certainly alters the clear statement in former article 17.25, section 6 that limited the charges covered to two specific categories—(1) a rate, and (2) an initial charge for a policy (by whatever name called). The structure of the recodified statute provides less clear guidance as to what charges are covered and what charges are not.

On its face, the new language could conceivably be read as requiring county mutual insurers to file a schedule of any amount they charge policyholders (or applicants for policies) for literally anything. However, there are a number of problems with this construction. If read to apply

15

to *any* charge, the statute would cover any type of charge by an insurance company—whether or not the charge was related to the insurance policy or the insurance relationship—simply because the person charged also happened to be a policyholder or an applicant for a policy. For example, there would be nothing to limit the statute's application to amounts a company might charge a person for renting a piece of property owned by the company, or for amounts the company might charge for using a company parking garage if the person charged also happened to be a policyholder. Such an extraordinarily broad reading of the statute would be possible, but not reasonable.

The legislature plainly intended the statute to require county mutual insurers to file amounts that they charge "a policyholder" or "an applicant for a policy" that *relate to the policy of insurance*.[6] This is evidenced by the fact that the list of examples of charges "included" under the statute's coverage are all charges tied to the purchase of the insurance policy—rate, policy fee, inspection fee, membership fee, or initial charge. "Includes" is a term of enlargement and not of

---

[6] Farmers and USAA argue that the language of section 912.201 mandates this interpretation because the codified version of the statute should be read in such a way that the words "for a policy" modify the term "charges" rather than the term "applicant." This grammatical maneuver would make the statute literally apply only to charges "for a policy" made to a policyholder or an "applicant" as opposed to any charge (unconstrained by modifying language) an insurer might make to a policyholder or an "applicant for a policy." However, the history of the text of section 912.201 does not support this reading. Former article 17.25, section 6 applied to amounts "to be charged policyholders or those applying for policies." The nonsubstantive revision represented by section 912.201 uses the phrase "amounts the company charges a policyholder or applicant for a policy." It is apparent that the codifiers were attempting to follow their statutory mandate to restate the law "in modern American English to the greatest extent possible," and replaced the phrase "those applying for policies" with the phrase "applicants for policies." *See* Tex. Ins. Code Ann. § 30.001(b) (West 2007). Whether the replacement improved or modernized the English in the statute is debatable. However, it is more reasonable—in light of the fact that the 2003 codification of article 17.25, section 6 was intended to be nonsubstantive—to read the phrase "for a policy" to be associated with the term "applicant" rather than the term "charges."

16

limitation or exclusive enumeration and does not create a presumption that components not expressed are excluded. Tex. Gov't Code Ann. § 311.005(13) (West 2005). However, the principle of statutory construction known as *ejusdem generis* limits the breadth of general terms in a statute when the statute gives examples or a list of what is intended to be covered. "[W]hen words of a general nature are used in connection with the designation of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation." *See State v. Fidelity & Deposit Co. of Md.*, 223 S.W.3d 309, 312 (Tex. 2007) (quoting *Hilco Elec. Coop. v. Midlothian Butane Gas Co.*, 111 S.W.3d 75, 81 (Tex. 2003)). In other words, the principle of *ejusdem generis* directs that the term "charges" as used in section 912.201—since it is used generally without any definition—be interpreted to include only charges of the same kind, class, or nature as the types of charges listed in the statute. *Id.*

In addition, reading the statute to include charges that have nothing at all to do with the insurance policy arguably runs afoul of the principle of statutory construction that we consider the consequences of a particular construction and not construe a statute in a manner that will produce absurd results. Tex. Gov't Code Ann. § 311.023 (West 2005); *see Fleming Foods*, 6 S.W.3d at 284; *see also State v. Hodges*, 92 S.W.3d 489, 494 (Tex. 2002). To construe the statute to apply to any and all charges an insurer might make to a policyholder regardless of whether those charges relate to the insurance policy—e.g. parking garage fees for visitors to the company's building who happen to be policyholders or cafeteria charges to employees who use the company's cafeteria and are also policyholders—would lead to absurd and plainly unintended results. As the Texas Supreme Court noted in *State v. Hodges*, the construction of the statute advocated by Hodges in that case was

17

linguistically *possible*, but it was not reasonable nor required by the statute's language, and the court declined to adopt it. 92 S.W.3d at 495. Similarly, here it is possible to construe the recodified statute as applying to charges made by an insurer regardless of their connection to the policy of insurance, but such a construction is not reasonable in light of the purpose of the statute, the history of the statute, the text read as a whole, the regulatory scheme in place addressing the charges at issue, and the potential consequences of such a broad construction. Thus, given the history and text of section 912.201, we are of the view that it should be interpreted to include only those charges that are of the same kind, class, or nature as a rate, policy fee, inspection fee, membership fee, or initial charge.

Another problem with the construction advocated by Romo and Racliffe is that it runs counter to the stated legislative intention that the 2003 codification be without substantive change. Tex. Ins. Code Ann. § 30.001(a). The Plaintiffs' construction would necessarily entail a dramatic change in this statute—a change at odds with the Department of Insurance's regulatory enforcement of the statute. It would involve changing the charges covered from two specific categories that are expressly associated with the policy of insurance to anything an insurer might find itself charging a policyholder, whether the charge relates to the insurance relationship or something else altogether. Such an inadvertent change is certainly possible, as demonstrated by *Fleming Foods of Texas, Inc. v. Rylander*, 6 S.W.3d 278 (Tex. 1999). The court held in that case that if the change occurs in clear, unambiguous language in the recodified version of the statute, we are obligated to enforce the statute as written and give effect to the intention of the legislature as expressed in the unambiguous words of the statute unless there is an obvious error, such as a typographical error, or application of the

18

literal language of the statute would produce an absurd result. *Fleming Foods*, 6 S.W.3d at 284-85. The change in the statute at issue here, however, is not the same sort of change that the court was faced with in *Fleming Foods*. Here, the change in the structure of the statute does not dictate a single construction that is so clear, unambiguous, and without absurd result that we are compelled to give it effect. Rather, the recodified statute, while conceivably subject to the construction advocated by the Plaintiffs, can be and is more reasonably construed in a more limited fashion when read as a whole with appropriate principles of statutory construction applied.

Construing section 912.201 to apply to charges that are of the same kind, class, or nature as a rate or an initial charge for a policy has the benefit of reconciling the history of the statute, the Department of Insurance's regulatory view of the statute, the existence of a specific, separate regulatory structure to deal with the installment payment plan fees at issue, and the fact that the codification of section 912.201 was intended to be done without substantive change. The Plaintiffs' construction would put these various factors in conflict and create unnecessary problems in the enforcement and application of section 912.201. Consequently, we hold that section 912.201, as currently formulated, applies to charges made by county mutual insurers that are of the same kind, class, or nature as a rate or an initial charge for a policy regardless of what that charge is called. As noted previously, the installment payment plan fees at issue in this case are not such a charge. Accordingly, the trial court erred in declaring that the installment fees are charges covered by section 912.201.

*Conclusion*

Our conclusion that former article 17.25, section 6 and its successor section 912.201 do not apply to the installment payment plan fees at issue in this case effectively moots any question regarding the application of the filed rate doctrine, and we do not reach that issue. We reverse declarations 1, 2, and 3 in the Final Declaratory Judgment entered by the district court in this cause and hold as follows:

1. The fees charged by Farmers Texas County Mutual Insurance Company and USAA County Mutual Insurance Company for making an installment payment plan available for the payment of premiums on automobile insurance policies are not charges covered by Texas Insurance Code section 912.201 or its predecessor, former Texas Insurance Code article 17.25, section 6, and are not required to be filed with the Texas Department of Insurance pursuant to those statutes; and

2. The collection of the service charges from Plaintiffs Irene Romo and Fenn Ratcliffe by Farmers Texas County Mutual Insurance Company and USAA County Mutual Insurance Company, respectively, for providing an installment payment plan for the automobile insurance premiums paid by Plaintiffs Irene Romo and Fenn Ratcliffe is not prohibited by law for failure of Farmers Texas County Mutual Insurance Company and USAA County Mutual Insurance Company to have filed a schedule of such charges with the Department of Insurance pursuant to Texas Insurance Code section 912.201 or its predecessor, former Texas Insurance Code article 17.25, section 6.

Our holding is limited to the legal questions of (1) the construction of section 912.201 and its predecessor as stated and (2) whether the charges at issue are subject to the filing

requirements of those statutes.  We offer no opinion as to the propriety of the charges in any other context or with respect to any other law.


_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed in part; Reversed and Rendered in part

Filed:   April 15, 2008