# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-24-00313-CV

**Rickye Henderson, Appellant**

**v.**

**Ali Arabzadegan, Appellee**

### FROM THE 353RD DISTRICT COURT OF TRAVIS COUNTY
NO. D-1-GN-23-001138, THE HONORABLE JESSICA MANGRUM, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Rickye Henderson appeals the trial court's order denying his application for indigency status. Henderson asserts that the trial court failed to properly consider the evidence he presented and made incorrect and biased assumptions about his property ownership, income, and employment status. After reviewing the record, we conclude that the trial court did not abuse its discretion in denying his application for indigency status. We therefore affirm the trial court's order.

## BACKGROUND

After the trial court issued a final judgment in the underlying suit against him and his co-defendants, Henderson, who is a pro se litigant, sought to proceed with an appeal without payment of costs, which he alleges he cannot afford to pay. On April 10, 2024, Henderson filed his Statement of Inability to Afford Court Costs or an Appeal Bond (Statement of Inability)

pursuant to Rule 145(b) of the Texas Rules of Civil Procedure.[1]  *See* Tex. R. Civ. P. 145(b).  He also filed his notice of appeal of the final judgment on the same day.

On April 29, the trial court notified the parties that a hearing on Henderson's Statement of Inability was set for May 9.  *See id.* R. 145(f)(1) (requiring declarant to be given 10 days' notice of oral evidentiary hearing on challenge to statement of inability to afford court costs); *see also id.* R. 145(e)(2).  At the hearing, Henderson testified regarding his alleged indigency and the assertions he made in his Statement of Inability.  He presented no other documents or exhibits.[2]  At the beginning of the hearing, appellee's counsel initially stated that appellee did not oppose

---

[1]  Henderson's Statement of Inability was signed under penalty of perjury, as allowed by Texas Rule of Civil Procedure 145(b).  *See* Tex R. Civ. P. 145(b) (requiring party to file Statement of Inability approved by Texas Supreme Court or another sworn document containing same information and stating that "[a] 'sworn' Statement is one that is signed before a notary or made under penalty of perjury"); *see also* Tex. Civ. Prac. & Rem. Code § 132.001(a) ("[A]n unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute or required by a rule, order, or requirement adopted as provided by law.").  Henderson filled out a form Statement of Inability identical in relevant part to the form promulgated by the Texas Supreme Court, which includes an option to sign the form under penalty of perjury and includes the jurat required by Section 132.001 for an unsworn declaration. Henderson electronically signed the jurat on the Statement of Inability form.  Appellee Arabzadegan contends that we should affirm the trial court's denial of Henderson's application for indigency status on the ground that the statement is procedurally deficient, arguing that it was not properly sworn because Rule 21(f)(7)(A) does not allow electronic signatures on documents that are notarized or sworn.  *See* Tex. R. Civ. P. 21(f)(7)(A).  We need not decide whether Rule 21(f)(7)(A) applies to an unsworn declaration that satisfies Rule 145's requirement that a Statement of Inability be "sworn" because we affirm the trial court's ruling that Henderson is not indigent on the merits.  *See* Tex. R. App. P. 47.1.

[2]  With his reply brief, Henderson filed an appendix containing documents that he asserts prove his inability to pay costs, but nothing in the record indicates that he offered these documents into evidence at the hearing.  We cannot consider documents attached as appendices to a brief if they are not formally included in the appellate record.  *See, e.g.*, *Vorwerk v. City of Bartlett*, No. 03-21-00001-CV, 2021 WL 3437889, at *3 (Tex. App.—Austin Aug. 6, 2021, no pet.) (mem. op.) (citing *Burke v. Insurance Auto Auctions Corp.*, 169 S.W.3d 771, 775 (Tex. App.—Dallas 2005, pet. denied)); *see also Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 892 (Tex. App.—Austin 2010, pet. denied) ("We are limited to the appellate record provided.") (citing Tex. R. App. P. 34.1 (describing contents of appellate record)).

Henderson's indigency claim, so long as it was not being considered as a request to allow him to supersede the judgment. However, after Henderson refused to disclose certain information in response to questions by both the trial court and appellee's counsel, appellee's counsel argued that Henderson had not satisfied his burden of proving his inability to afford payment of costs. On May 13, the trial court issued its order denying Henderson's application for indigency status, which included three-and-a-half pages of detailed findings. Among other things, the trial court found that Henderson failed to provide prima facie evidence of his inability to afford payment of costs, offered testimony that was "conclusory, self-serving, and not credible," and failed to present any concrete evidence supporting his contentions. Henderson timely filed a motion challenging the trial court's order, *see id.* R. 145(g), which we have docketed as this appeal.

## STANDARD OF REVIEW AND APPLICABLE LAW

Rule 145 of the Texas Rules of Civil Procedure sets out the process by which a party may assert that he cannot afford payment of court costs in a district or county court and apply for indigency status. *Id.* R. 145. First, the party—referred to as the "declarant"—must file a sworn Statement of Inability to Afford Payment of Court Costs. *Id.* R. 145(b). A statement is sworn if it is "signed before a notary or made under penalty of perjury." *Id.* The Rule provides that "[t]he declarant should submit with the Statement any available evidence of the declarant's inability to afford payment of costs." *Id.* R. 145(d). Under Rule 145, the following evidence qualifies as a prima facie showing that the declarant is unable to afford payment of costs:

(1)     the declarant or the declarant's dependent receives benefits from a means-tested government entitlement program;

(2)     the declarant is being represented in the case by an attorney who is providing legal services to the declarant through:

3

> (A) a provider funded by the Texas Access to Justice Foundation;
>
> (B) a provider funded by the Legal Services Corporation; or
>
> (C) a nonprofit that provides civil legal services to persons living at or below 200% of the federal poverty guidelines published annually by the United States Department of Health and Human Services; or

> (3) the declarant has applied for free legal services for the case through a provider listed in (2) and was determined to be financially eligible but was declined representation.

*Id.* R. 145(d).

Then, either the clerk, the court reporter, a party, or the court itself may contest the Statement of Inability. *Id.* R. 145(d). If the Statement of Inability is contested, the trial court may not require the declarant to pay costs without holding an oral evidentiary hearing, for which the declarant must be given at least ten days' notice. *Id.* R. 145(f)(1). At the hearing, "the burden is on the declarant to prove the inability to afford costs." *Id.*

Finally, if the court finds that the declarant has failed to meet his burden, it must issue an order requiring the declarant to pay costs that is "supported by detailed findings." *See id.* R. 145(f)(2). The order must state in conspicuous type: "You may challenge this order by filing a motion in the court of appeals within 10 days after the date this order is signed. See Texas Rule of Civil Procedure 145." *Id.* R. 145(f)(4).

The test for determining indigence is whether the record as a whole shows "by a preponderance of the evidence that the applicant would be unable to pay the costs . . . if he really wanted to and made a good-faith effort to do so." *Higgins v. Randall Cnty. Sheriff's Off.*, 257 S.W.3d 684, 686 (Tex. 2008) (quoting *Pinchback v. Hockless*, 164 S.W.2d 19, 20 (Tex. [Comm'n Op.] 1942)). We review a trial court's ruling on a contest to a Statement of Inability for

4

an abuse of discretion. *Strickland v. iHeartMedia, Inc.*, 668 S.W.3d 34, 37 (Tex. App.—San Antonio 2022, no pet.); *Kastner v. Texas Bd. of Law Exam'rs*, No. 03-08-00515-CV, 2009 WL 2476640, at *1 (Tex. App.—Austin Aug. 12, 2009, no pet.) (mem. op.). The trial court abuses its discretion if it "acts without reference to any guiding rules or principles or in an arbitrary or unreasonable manner." *Basaldua v. Hadden*, 298 S.W.3d 238, 241 (Tex. App.—San Antonio 2009, no pet.) (per curiam). "Under an abuse of discretion standard, challenges to the legal and factual sufficiency of the evidence are not independent grounds of error; rather, they are simply factors in assessing whether the trial court abused its discretion." *Rangel v. Rangel*, --- S.W.3d ---, No. 04-23-00931-CV, 2024 WL 2165372, at *2 (Tex. App.—San Antonio May 15, 2024, no pet.) (quoting *In re Marriage of Thrash*, 605 S.W.3d 224, 229 (Tex. App.—San Antonio 2020, pet. denied)).

"When a party attacks the legal sufficiency of an adverse finding on an issue on which it bears the burden of proof, the judgment must be sustained unless the record conclusively establishes all vital facts in support of the issue." *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 480 (Tex. 2017). "An issue is conclusively established 'if reasonable minds could not differ about the conclusion to be drawn from the facts in the record.'" *Community Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 681 (Tex. 2017) (quoting *Childs v. Haussecker*, 974 S.W.2d 31, 44 (Tex. 1998)).

"When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001); *accord Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016). "The court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight

5

and preponderance of the evidence that it is clearly wrong and unjust." *Dow Chem.*, 46 S.W.3d at 242.

When the trial court acts as the factfinder, it "is the sole judge of the witnesses' credibility and the weight to be given their testimony, and is free to resolve any inconsistencies." *Iliff v. Iliff*, 339 S.W.3d 74, 83 (Tex. 2011) (quoting *Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 567 (Tex. 2000)).

## ANALYSIS

As an initial matter, Henderson does not raise any procedural deficiencies on appeal. *See* Tex. R. Civ. P. 145. Rather, he voices four "grave concerns" regarding the trial court's denial of his application for indigency status. First, he alleges that the trial court "erroneously attributed property ownership" to him, and "disregard[ed] irrefutable evidence demonstrating that said property is held in trust for the benefit of his deceased mother's children." Second, Henderson argues that the trial court's "baseless assumptions regarding [his] employment history and income starkly contradict the facts." Third, he asserts that the trial court ignored "critical evidence pertaining to [his] lack of income and assets." Finally, he alleges that the hearing was "marred by glaring bias." However, he makes only conclusory statements in support of his arguments and fails to provide citations to authorities and to the record to support any of these claims. *See* Tex. R. App. P. 38.1(i) (requiring appellant's brief to contain "a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record"). Despite this deficiency in Henderson's briefing, following the Texas Supreme Court's direction to "reach the merits of an appeal whenever possible," we address Henderson's arguments below. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam).

6

Henderson had the burden to prove by a preponderance of the evidence that he could not afford payment of costs "if he really wanted to and made a good-faith effort to do so." *Basaldua*, 298 S.W.3d at 241. In his Statement of Inability and in his testimony, he claimed that he is unemployed, has no income, and does not own any property other than his car. He maintained that he has not been employed for several years. He also asserted that he was currently living at his friend's house on the West Coast free of cost, in order to mentally recover from the recent tragic death of his son. Because of this mental distress, he argued that he was "mentally incapable" of obtaining employment at this time.

However, the trial court found that (1) he did not provide prima facie evidence of his inability to pay, (2) he gave conflicting and evasive answers throughout his testimony, which the trial court determined was "conclusory, self-serving, and not credible," and (3) he offered no concrete evidence to show that he is unemployed and has no income, or that he has made a good-faith effort to obtain employment or a loan to finance his litigation. We consider each of these findings and the relevant evidence in turn.

## I. Henderson failed to provide prima facie evidence of his inability to afford payment of costs.

Henderson did not claim in his Statement of Inability or in his testimony that he receives benefits from a means-tested government entitlement program. He was not being represented by an attorney who is providing legal services through any of the above organizations. Finally, he asserted in his Statement of Inability that he "did not apply for legal aid." Although he later testified that he did contact legal aid, he did not indicate that he completed the intake process or received a determination of whether he was financially eligible for free legal services.

Therefore, we conclude that the record supports the trial court's finding that Henderson did not provide prima facie evidence of his inability to afford payment of costs.

## II.    Henderson's testimony was riddled with evasive and contradictory statements.

The trial court characterized several of Henderson's answers as evasive and contradictory, and it found that his overall testimony was "conclusory, self-serving, and not credible." At the hearing, Henderson testified that he was currently unemployed with no income and had been for several years. He testified that he last worked managing clubs but that he often would not get paid because "it was an investment." He said he had no income, "unless my friends or something like that send me some money or my family." However, when questioned further about his past employment, he offered vague and evasive answers. For example, when asked when he last had a job, Henderson responded:

> It's been years. I—I don't want to say a date because I can see where this is going. I can't pinpoint a date of when I last worked. The thing that I've done is I've operated and managed clubs on an investment purpose, but if the club doesn't do— or the business doesn't do good, I wasn't getting paid. And I'm trying to think, when is the last time . . .

> I leased a building under the investment of someone else, but the club wasn't really making any money. It was open a few days. It was open about a month, maybe, and it generated some money. But I didn't get it.

Henderson offered no documents or any other evidence to support these claims. He provided no explanation as to why he did not receive compensation even when the club "generated some money" or why he worked there if he did not get paid. He also provided no evidence of any medically diagnosed disability or other factor that would have prevented him from obtaining an

alternative paying job. Although questioned several times, his only answer as to when he last worked was some form of "[i]t's been years."

Henderson was also evasive in his answers regarding his current living situation. He testified that he was temporarily living at his friend's residence on the West Coast free of charge. He gave no further specificity of the location other than repeatedly affirming that it was on "the West Coast." And when asked about the identity of his friend, Henderson refused to answer and claimed that his friend did not want his identity to be known and that "it's none of [the court's] business." Both opposing counsel and the trial court directly asked Henderson if he was living with his co-defendant in the underlying suit, Curtis Meeks. Instead of denying the allegation, Henderson responded, "You won't get that answer from me because we're here about me. If you ask—you got to ask Mr. Meeks."

Henderson also gave inconsistent answers regarding his monthly expenses and his assets. In his Statement of Inability, he listed his only monthly expenses as a $344 car payment and a $14 child support payment, for a total of $358 per month.[3] The car payment was for his 2017 ATS Cadillac motor vehicle, the only asset he claimed to own. At the hearing, he testified that he was behind on the monthly payments and suggested that the car was on the verge of repossession, but he presented no evidence other than his own testimony to support this claim. When asked how long he had owned the car and whether he had an income when he bought it, Henderson claimed he could not remember and accused opposing counsel of trying to "discredit" him and "humiliate" him. When asked again later by the trial court how he was able to get approved for a car loan without a job or an income, he then remembered that he received money

---

[3] Henderson testified that the $14 monthly payment is for overdue child support for his daughter who has aged out and is no longer his dependent.

in a settlement from a prior lawsuit, which he used to put a down payment on the car. However, this settlement was not disclosed in his Statement of Inability, nor was it mentioned earlier in his testimony. In addition, the trial court noted that Henderson claimed $0.00 for all other monthly expenses, including "for utilities/telephone; clothing/laundry; insurance; medical/dental; and transportation/gas." The trial court summarized its assessment of Henderson's testimony about his income and expenses as follows:

> [T]he Court finds these [income and expense claims] suspect, particularly given the fact that Defendant claims the aforementioned Cadillac as an expense, and presumably used the Cadillac to travel from Texas to the West Coast. In the alternative, if Defendant flew from Texas to his current location, he would have required income to secure a ticket.

The trial court found that Henderson's testimony regarding his monthly expenses and lack of income was "suspect" and "question[ed] the veracity" of his claims.

Finally, Henderson provided contradictory answers regarding his property ownership. In his Statement of Inability, Henderson listed an Austin, Texas address as his home address, which he testified was his "mother's house." However, in its findings, the trial court sua sponte took judicial notice of the Travis County Appraisal District records, "which indicate that Defendant is an owner on the property [listed as his residence]." This was not disclosed in Henderson's Statement of Inability or at the hearing. Henderson argues that the trial court "disregard[ed] irrefutable evidence demonstrating that said property is held in trust for the benefit of his deceased mother's children," but he presented no such documents or other evidence to support this contention, not to mention the fact that he is presumably one of "his deceased mother's children." His only testimony regarding this property was that his brother, sister, and nephew currently live there, and that he "sleep[s] on the floor" when he is there. Even if that were true, it

10

does not prove that the trial court "erroneously attributed property ownership to [him]" or that the property is held in trust. The trial court found that Henderson's failure to disclose his ownership of the property on his Statement of Inability "further calls into question [his] truthfulness in completing the [Statement of Inability] and in testifying to the Court."

As mentioned, the trial court "is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Iliff*, 339 S.W.3d at 83. Here, the court reasonably questioned the validity of Henderson's claims given the aggregate effect of his numerous evasive and contradictory answers. First, he claimed to not remember when he last worked and gave no explanation as to why he worked at a job where he often did not get paid. The trial court acted within its discretion when it found this testimony suspect because he could not provide a more precise answer than "it's been a few years" to the question of when he last worked. Likewise, it was not arbitrary or unreasonable for the trial court to conclude that if Henderson truly had no income for the last few years, he would not have worked for no money "on an investment purpose," especially since there was nothing hindering him from obtaining alternative employment. *See Basaldua*, 298 S.W.3d at 242 (noting that voluntary unemployment may be considered when determining indigence). Second, the trial court also reasonably considered the vague and evasive nature of Henderson's answers about where he was living and whether he was staying with his co-defendant. Third, the trial court reasonably considered Henderson's failure to disclose in his Statement of Inability the settlement received from a prior lawsuit until after he was questioned multiple times about how he could afford to buy a car without a job or income. Fourth, the trial court reasonably questioned the veracity of Henderson's claim to have zero monthly expenses other than $358 in car payments and past-due child support, given that it inevitably would have cost money to move from Texas to the West Coast, even if temporarily. And fifth, the trial court

11

reasonably considered Henderson's failure to disclose his ownership of the property in Austin, which he never mentioned when questioned about his assets. In sum, it was within the trial court's discretion to disbelieve Henderson's testimony. *See Lovall v. Bianchi*, No. 01-93-00611-CV, 1994 WL 27336, at *2 (Tex. App.—Houston [1st Dist.] Feb. 3, 1994, writ denied) (not designated for publication) (holding that trial court was entitled to disbelieve uncontroverted testimony of party seeking indigency status and to conclude that she had failed to meet her burden of proof because she provided several evasive answers and claimed to be unable to remember answers to other questions related to her indigent status).

### III. Henderson offered no concrete evidence of his inability to afford payment of costs and did not demonstrate a good-faith effort to attempt payment.

Finally, Henderson argues that the trial court made "baseless assumptions" about his employment history and income which "starkly contradict the facts," and it ignored "critical evidence." However, the trial court found, and the record supports, that Henderson did not provide any documentary evidence pertaining to his employment, income, or expenses, and as explained above, the trial court reasonably concluded that Henderson's testimony that he was unemployed and had no income and virtually no expenses was not credible. The trial court further found that "there is no evidence, nor is there reason to believe, (1) that Defendant is unable to obtain employment or (2) that Defendant is ineligible for employment at this time." This finding supports a conclusion that Henderson failed to make a good-faith effort to obtain employment or otherwise try to pay court costs.

Rule 145 instructs the declarant to "submit with the Statement any available evidence of the declarant's inability to afford payment of costs." Tex. R. Civ. P. 145(d). Yet Henderson neither submitted any documentation or exhibits with his Statement of Inability nor

submitted any evidence at the hearing to support his contentions. *See In re M.C.M.*, No. 05-21-00242-CV, 2021 WL 4841180, at \*1 (Tex. App.—Dallas Oct. 18, 2021, no pet.) (mem. op.) (affirming trial court's order requiring declarant to pay costs in part because she "did not offer any documentation of her student loans or any other exhibits in support of her claim of indigence"). And as explained above, the trial court reasonably found Henderson's vague and evasive testimony regarding his past employment and monthly expenses not credible.

Further, Henderson does not appear to have attempted to obtain a loan to pay court costs. But it is Henderson's burden to show that he cannot afford payment of costs after making a good-faith effort to do so, which generally requires an attempt to seek a loan. *See Wallgren v. Martin*, 700 S.W.2d 28, 30 (Tex. App.—Dallas 1985, no writ) (affirming trial court's order requiring party to pay costs in part because "he has made no attempt to borrow funds against this [personal-injury] claim to finance his litigation expenses"); *In re M.C.M.*, 2021 WL 4841180, at \*1 (affirming trial court's order requiring party to pay costs in part because she "has made no attempt to obtain a loan to pay for the reporter's record"). Here, Henderson has not tried to obtain a loan or otherwise borrow money, and he offered no evidence to indicate that he would be unable to if he tried. Indeed, Henderson is currently living at his friend's expense, and he indicated that he has received financial assistance from friends and family in the past. *See Wallgren*, 700 S.W.2d at 30 ("A litigant who voluntarily remains unemployed and lives by the generosity of relatives is not entitled to require the officers of the court to render services free while other citizens are required to pay for similar services.").

Henderson also did not provide evidence of any disability or other factor that would prevent him from obtaining employment now or in the future. He argued that he was "mentally incapable" of working because of the mental distress he has suffered following the death of his

13

son in October 2023. While we acknowledge the severe mental toll that such an event imposes, Henderson did not provide medical records or other evidence of a long-term mental disability that will hinder his ability to obtain employment in the future. *See id.* ("When the record demonstrates that a party has the ability to raise money through future employment, no abuse of discretion is shown in the sustaining of a contest to pauper's affidavit."); *see also Baughman v. Baughman*, 65 S.W.3d 309, 316 (Tex. App.—Waco 2001, pet. denied) (affirming trial court's order requiring party to pay costs, despite finding that party could not currently pay amount, because record indicated he would be able to in future "if he really wanted to and made a good faith effort to do so"). Further, Henderson did not indicate that he has tried applying for any jobs or that he intends to do so. Therefore, we conclude that the record supports the trial court's finding that he has not made a good-faith effort to obtain employment or otherwise attempt to pay court costs. *See, e.g.*, *In re M.M.J.*, No. 05-22-00356-CV, 2022 WL 2582560, at *2 (Tex. App.—Dallas July 8, 2022, no pet.) (mem. op.) (affirming trial court's order requiring party to pay costs in part because she had not interviewed for any jobs in over two years); *Baughman*, 65 S.W.3d at 316 (citing cases for proposition that "voluntary unemployment does not make an appellant indigent"). Thus, we conclude that the trial court did not abuse its discretion in denying Henderson's application for indigency status.

**CONCLUSION**

Having determined that Henderson did not satisfy his burden of proving his inability to afford payment of court costs, we hold that the trial court acted within its discretion when it denied Henderson's application for indigency status. We affirm the trial court's order.

_____

Gisela D. Triana, Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed: August 16, 2024