

# NUMBER 13-24-00305-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

SHAWN ASHLEY MITCHELL, Appellant,

v.

ANNA DOLORES EVERETT, Appellee.

## ON APPEAL FROM THE COUNTY COURT AT LAW NO. 3
## OF NUECES COUNTY, TEXAS

# MEMORANDUM OPINION

**Before Chief Justice Tijerina and Justices Peña and West**
**Memorandum Opinion by Chief Justice Tijerina**

Appellant Shawn Ashley Mitchell and appellee Anna Dolores Everett moved for summary judgment on their requests for declaratory judgment concerning the validity of a special warranty deed. The trial court granted summary judgment in favor of appellee. By three issues, which we consolidate, appellant argues the trial court erred: (1) by granting summary judgment in favor of appellee where fact issues preclude summary

judgment; and (2) by awarding appellee attorney's fees under the Uniform Declaratory Judgment Act (UDJA). We affirm.

## I.    BACKGROUND

On February 6, 2004, Richard H. Mitchell and his mother opened a safe deposit box with First Bank of Odem (the bank). On June 14, 2017, Richard executed a power of attorney designating appellee, his caretaker, as his agent. Richard also executed a special warranty deed, purporting to convey his residence to appellee but reserving a life estate to himself. The deed was signed by him, notarized, and stored in his safe deposit box at the bank on June 15, 2017.

Richard died intestate on July 14, 2022, and appellant, Richard's nephew, is his only heir. On July 22, 2022, appellant filed suit asserting several causes of action and requested a declaration that the trial court "set aside" the deed due to "undue influence" and "revert ownership of the transferred property to [Richard's] estate." Appellant sought exemplary and punitive damages.

On August 8, 2022, appellee filed an answer, a counterclaim, and sought a declaration that the deed was valid and effective, requested attorney's fees and costs, and actual and exemplary damages.

On November 23, 2022, appellant filed a motion for summary judgment. Appellant argued that the conveyance was invalid as a matter of law because Richard did not deliver the deed to appellee and did not relinquish control of the deed. Thus, there was no present intent to convey the property to appellee. Appellant attached the deed and appellee's deposition testimony as summary judgment evidence.

On December 12, 2022, appellee filed a motion for partial summary judgment. In

2

addition to the deed and her deposition testimony, appellee attached the affidavits of Lana Tong, a retired branch manager at the bank, and Dolores Martinez, a current branch manager at the bank. Appellee contended there was no genuine issue of material fact regarding conveyance because Richard delivered the deed to her with the present intent to convey the property to her, and she deposited the deed in the safe deposit box herself.

Appellant supplemented his motion for summary judgment and attached the affidavit of safe deposit box expert David P. McGuinn, transcripts of Martinez's and Lana's depositions, and the deposition transcript of Kayla Reeves, a "new account representative" at the bank.

The trial court denied both motions for summary judgment on January 25, 2024. On March 21, 2024, appellee filed a motion to reconsider her motion for partial summary judgment. On April 4, 2024, appellee filed a motion for summary judgment on attorney's fees and a motion for final judgment. On April 30, 2024, appellant responded to appellee's motion for final summary judgment.

On April 30, 2024, the trial court held a hearing on appellee's motion to reconsider. On May 8, 2024, the trial court granted appellee's motion for summary judgment finding that Richard delivered the 2017 deed to appellee prior to his death, and such constitutes a valid conveyance. The trial court awarded appellee attorney's fees in the amount of $25,626.47 and court costs. This appeal followed.

## II.    SUMMARY JUDGMENT

By his first issue, appellant argues that the trial court erred in granting summary judgment in favor of appellee where the "undisputed evidence negates delivery, acceptance and present intent as a matter of law because [Richard] retained control of

3

the deed until death and instructed [appellee] not to record it until then, and [appellee] had no legal right of access after his death." Appellant further argues that fact issues regarding Richard's delivery, intent, and the deed's validity preclude summary judgment.

## A.    Standard of Review

We review de novo a trial court's order granting summary judgment. *Hillis v. McCall*, 602 S.W.3d 436, 439 (Tex. 2020). Under traditional summary judgment procedure, the movant has the initial burden of showing that no genuine issue of material fact exists, and the court should grant a judgment as a matter of law. *See id.* at 439–40; TEX. R. CIV. P. 166a(c). When the movant presents summary judgment proof of each element of the claim or defense upon which it seeks summary judgment, the burden shifts to the nonmovant to disprove or raise an issue of fact as to at least one element of the movant's claim or defense. *See Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) (citing *City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979)).

In reviewing a grant of summary judgment, we "examine the entire record in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion." *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). And when, as here, the trial court does not specify the grounds on which it granted a summary judgment, we must uphold the trial court's judgment if any of the grounds properly presented are meritorious. *Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 248 (Tex. 2013).

## B.    Applicable Law

To convey an interest in real property, the instrument of conveyance must satisfy

4

the requirements of the statute of conveyances: it must be in writing, signed by the grantor, and delivered to the grantee. *See* TEX. PROP. CODE § 5.021; *Pertolanitz v. Waldroup*, 722 S.W.3d 168, 173 (Tex. App.—Houston [1st Dist.] 2025, no pet.). Title to conveyed real property vests in the grantee upon execution and delivery of the deed. *Thompson v. Six Shooter Enters., LLC*, 633 S.W.3d 107, 114 (Tex. App.—El Paso 2021, no pet.). "Delivery" of the deed is accomplished when the grantor places the deed within the grantee's control with the intention that the deed become operative as a conveyance. *Pertolanitz*, 722 S.W.3d at 173. "The question of whether a deed has been delivered is primarily one of the grantor's intent." *Adams v. First Nat'l Bank of Bells/Savoy*, 154 S.W.3d 859, 869 (Tex. App.—Dallas 2005, no pet.). "The fact that the grantee has possession of a duly executed deed raises a presumption that the deed was delivered by the grantor." *Pertolanitz*, 722 S.W.2d at 173; *Raymond v. Aquarius Condo. Owners Ass'n*, 662 S.W.2d 82, 91 (Tex. App.—Corpus Christi–Edinburg 1983, no writ) ("To consummate a delivery, the deed must be placed in the hands of the grantee, or within his control."). "The question of delivery of the deed is controlled by the intent of the grantor, and it is determined by examining all the facts and circumstances preceding, attending, and following the execution of the instrument." *Hernandez v. Hernandez*, 547 S.W.3d 898, 901 (Tex. App.—El Paso 2018, pet. denied).

## C.    Pertinent Facts

According to appellee's affidavit, in 2002, she moved and became Richard's neighbor. Since then, she has assisted in his family's healthcare without compensation and has been "like family" to Richard. Appellee asserted that Richard "frequently told friends and relatives that he wanted to leave everything to [her]." In her deposition,

5

appellee stated that she interacted with Richard daily, handled his errands, did his grocery shopping, bathed him, cleaned his house, and Richard's doctors personally knew her. She claimed that Richard would introduce her as his daughter, and she called him "dad." Appellee asserted that Richard executed the 2017 deed to her "as a surprise." She stated Richard told her that he paid off appellant's house in Atlanta, that Richard's house would be completely hers, that appellant was aware of that, and that there would be no problems in the future. Richard told her because the deed was notarized, it would "automatically transfer to [appellee] once it was filed."

Appellee stated on June 15, 2017, Richard asked her to take him to the bank. He handed her an envelope that had her name on it. The deed and power of attorneys were inside the envelope. When she and Richard arrived at the bank, Richard stayed in the car and asked her to call Tong, the bank's branch manager at the time.[1] After Tong spoke to Richard in his vehicle, she showed appellee Richard's safe deposit box. Appellee retained the key to the box, signed the access form, and locked the box.

Tong spoke with Richard "on numerous occasions regarding his accounts and safe deposit box" at the bank. Tong stated that Richard called her and said, "I have my deed ready. [Appellee's] coming to put it in the box." Tong clarified that appellee needed to be an owner or signer of the box if she needed to deposit something in it. Richard then stated, "I want her to be able to get in the box when I die." Tong testified that appellee "signed the documentation required to be a lessee on the safe deposit box" and placed the deed in the box.

Martinez testified that she served as the bank's branch manager and that appellee

---

[1] Richard was wheelchair bound.

6

"signed the documentation required to be a lessee on [Richard's] safe deposit box." Martinez said that the bank's access log indicated to them that appellee was an owner or lessee of the box, such that she was able to close the account following Richard's death.

In her deposition, Reeves testified that she notarized Richard's power of attorney wherein Richard gave appellee the power of attorney. Reeves testified that Richard told her, "I would like to add [appellee] to my safe deposit box." Appellee provided Reeves with verification (such as a driver's license and social security number). Reeves then added appellee to Richard's safe deposit box.

## D. Analysis

Here, there was evidence that the deed was placed in appellee's hands and within her control. There was uncontroverted evidence that appellee deposited the deed in Richard's safe deposit box and that Richard instructed Tong and Reeves to make appellee a lessee on the safe deposit box he owned. The summary judgment evidence included the record of access dated June 15, 2017, bearing appellee's and Richard's signatures. The evidence further provided that the bank recognized appellee as a lessee and holder of Richard's safe deposit box, appellee was listed as a "lessee" in the access log, and appellee closed the box on July 14, 2022—after Richard passed away. *See* TEX. FIN. CODE § 59.106 ("If a safe deposit box is leased in the name of two or more persons jointly . . . each of those persons is entitled to have access to the box and to remove its contents in the absence of a contract to the contrary.").

Appellant does not provide any evidence to refute that Richard delivered the deed other than arguing he "never relinquished control of it."[2] "The fact that he could have

---

[2] To the contrary, appellant acknowledges that Richard manually gave appellee the deed: Richard

7

recovered the deed from his attorney prior to his death does not constitute evidence that he did not intend to make a delivery." *Rothrock v. Rothrock*, 104 S.W.3d 135, 140 (Tex. App.—Waco 2003, pet. denied); *Vasquez v. Vasquez*, 973 S.W.2d 330, 332 (Tex. App.—Corpus Christi–Edinburg 1998, pet. denied) (finding that although the grantor retained the power to reclaim the deed, it did not bear on the grantor's "intent to relinquish control of the deed"). Appellant did not provide us with any summary judgment evidence that there was no delivery. Furthermore, appellee's possession of the deed created the presumption that delivery was accomplished. *Gonzales v. Adoue*, 58 S.W. 951, 953 (Tex. 1900) ("If a deed duly executed be found in the possession of the grantee, the delivery by the grantor and acceptance by the grantee will be presumed, subject, however, to be disputed."); *see Pertolanitz*, 722 S.W.3d at 173; *see also In re Wheatley*, No. 08-23-00220-CV, 2023 WL 5486238, at *3 (Tex. App.—El Paso Aug. 23, 2023, no pet.) (mem. op.) ("[W]e reiterate that the fact that the Deeds were found in Judy's possession at the time of her death gives rise to a presumption that they were delivered to her.").

Examining all the facts and circumstances preceding and following the execution of the deed, we conclude that when Richard manually delivered to appellee possession of the deed, he did so with the intention to convey the interest to her while retaining the right to use and possess it during his lifetime. *See Vasquez*, 973 S.W.3d at 331; *see also Conway v. Durell*, No. 13-10-00614-CV, 2012 WL 3043100, at *3 (Tex. App.—Corpus Christi–Edinburg July 26, 2012, no pet.) (mem. op.). Therefore, the trial court did not err

---

"only handed it to her with the express instruction to place it in his safe deposit box." At the hearing, appellant argued that "delivery was of the envelope containing the deed, rather than the deed itself." Thus, appellant concedes that Richard gave appellee physical possession of the deed.

in granting summary judgment.

### III.    ATTORNEY'S FEES

By his second issue, appellant argues that the trial court erred by awarding attorney's fees given the "lack of evidence of reasonableness or necessity."

### A.    Applicable Law

Under the UDJA, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." TEX. CIV. PRAC. & REM. CODE § 37.009. The UDJA "entrusts attorney fee awards to the trial court's sound discretion, subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). "A trial court abuses its discretion by awarding fees when there is insufficient evidence that the fees were reasonable and necessary, or when the award is inequitable or unjust." *Save Our Springs All., Inc. v. City of Dripping Springs*, 304 S.W.3d 871, 891 (Tex. App.—Austin 2010, pet. denied).

Some factors guiding the factfinder in determining reasonableness and necessity include: (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered. *See Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 494 (Tex. 2019). "A court is not required to receive evidence on each of these factors." *State & Cnty. Mut. Fire Ins. Co. ex rel. S. United Gen. Agency of Tex. v. Walker*, 228 S.W.3d 404, 408 (Tex. App.—Fort Worth 2007, no pet.). To support the requested amount of attorney's fees, parties frequently rely on the testimony or affidavit of the attorney of record. *See Rohrmoos*, 578 S.W.3d at 476. The trial court found that appellee was entitled to recover from appellant $25,626.47 as reasonable and necessary attorney's fees, so we look for evidence supporting this amount.

**B.      Discussion**

Appellant argues that the evidence of attorney's fees is insufficient without billing records or specific evidence detailing the particular tasks, who performed those tasks, and the time required. However, billing records to support an award of attorney's fees are not required. *Rohrmoos*, 578 S.W.3d at 502; *Air Routing Int'l Corp. (Canada) v. Britannia Airways, Ltd.*, 150 S.W.3d 682, 692 (Tex. App.—Houston [14th Dist.] 2004, no pet.) ("[B]illing records need not be introduced to recover attorney's fees."). Here, attorney John Bell provided an affidavit that he and his associate Rhonnie Smith provided legal services on this case. Bell testified about his professional experience and background and described the work he performed and the amount of time he spent on the case. The affidavit provides that Bell's hourly rate is $360 an hour while Smith's rate is $250 an hour. Bell claimed that these fees are equal or less than what is customarily charged in south Texas because his customarily hourly rate is $450 per hour while Smith's fee is also

higher. Bell stated he and Smith expended over 80 hours working on this case consisting of: document review, legal research, drafting the various pleadings, attending several hearings, and drafting all motions on file. He explained that the attorneys exercised reasonable judgment to ensure that the costs incurred were commensurate with the actions taken and did not constitute duplicative work or were otherwise unnecessary. *See Rohrmoos*, 578 S.W.3d at 494. He further stated that the amount of attorney's fees in this case was necessary because appellant obtained a temporary restraining order based on false statements and filing suit for declaratory judgment. According to Bell, appellant filed suit in bad faith and did not use his real name in the proceedings, causing appellee to search court records for him in Texas and Georgia. Appellant's will contest was under the name "Shawn Ashley Volk." *See Rohrmoos*, 578 S.W.3d at 476.

Based on the foregoing, we hold that the evidence presented by Bell was legally sufficient to support the award of attorney's fees. *See Walker*, 228 S.W.3d at 409. We overrule appellant's last issue.

## IV.   CONCLUSION

We affirm the judgment of the trial court.

JAIME TIJERINA
Chief Justice

Delivered and filed on the
5th day of February, 2026.

11